UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:22cr33 (OAW) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL DIMASSA | : | May 10, 2023 |

## GOVERNMENT'S SENTENCING MEMORANDUM

### Introduction

The defendant was an elected Connecticut state representative who breached

the public trust and stole over a million dollars in funds earmarked for COVID

relief.   After reviewing all of the briefs filed by the parties in this case, the Court

should sentence the defendant pursuant to the considerations in 18 U.S.C.

§ 3553(a).

### Relevant Procedural History

On November 1, 2022, the defendant pled guilty to three related wire fraud

conspiracies to deprive West Haven of money largely designated for the relief of the

COVID pandemic.

On March 29, 2023, the probation office released the second disclosure of the

PSR.   In the PSR, the probation officer concluded that the base offense level for

DiMassa's conduct under § 2B1.1 is 7.   Fourteen levels are added because the loss

exceeded $550,000, but was less than $1,500,000.   Two additional levels are added

because the defendant abused a position of public trust to commit these offenses.

PSR ¶  51.   Further, two more levels are added because the defendant recruited

Mrs. DiMassa (Knox) and Mr. Bernardo to engage in the charged criminal conduct.

PSR ¶ 52.   Thus, after subtracting three levels for acceptance of responsibility in

light of the defendant's guilty plea, the total offense level is 22.   PSR ¶  58.

With total offense level of 22 and a CHC of I, the Guidelines recommend a

term of incarceration of 41-51 months.   *Id*. ¶ 106.   This is in accord with the

suggested term specified in the plea agreement.

Sentencing is currently set for May 31, 2023 at 10 a.m.

**Restitution**

Incorporating the Court's prior decisions concerning restitution for the three

other defendants in this case, this defendant should be ordered to pay restitution in

the following manner:

(1) With respect to the conspiracy with John Bernardo, the defendant should
be ordered to personally pay **$587,856.45** in restitution.   This figure is
the total loss of $636,783.70 attributable to the Compass Investments
conspiracy minus the $48,927.25 received by Mr. Bernardo and included
in his restitution order.

(2) With respect to the conspiracy with Lauren DiMassa, the defendant
should be ordered to pay **$147,776.10** and be jointly and severally liable
for that amount with Mrs. DiMassa (Knox).

(3) With respect to the conspiracy with John Trasacco, this defendant should
be ordered to personally pay **$278,038.00** in restitution.   This figure is
the total loss of $431,982.00 attributable to the L&H/JIL conspiracy
minus the $143,944.00 included in Mr. Trasacco's restitution order and
the additional $10,000 obtained from this conspiracy that was already
included in Mr. Bernardo's restitution order.

Thus, the defendant should be ordered to pay **$1,013,670.55** to the City of West Haven, $147,776.10 of which he shall be jointly and severally liable with Lauren DiMassa (Knox).

## Offense Conduct

The defendant participated in three separate conspiracies to defraud West Haven.   First, he and Lauren DiMassa (Knox) defrauded West Haven out of $147,776.10 by submitting false invoices related to youth services.   In this conspiracy, which was initiated and driven by DiMassa, DiMassa created the invoices, obtained the checks, and retained the majority of the proceeds.   Without Michael DiMassa, this conspiracy would never have started.

Second, the defendant conspired with John Bernardo to defraud West Haven of $636,783.70 through Compass Investments.   Once again, this conspiracy was created and driven by the defendant.   As with the Youth Services fraud, Mr. DiMassa initiated the scheme, created the invoices, and kept the vast majority of the proceeds.   Again, without Michael DiMassa, this conspiracy would never have started.

Third, the defendant conspired with John Trasacco to defraud West Haven of $431,982.00 through L&H and JIL.   This crime was significantly different from other two conspiracies.   Here, the fraud was initiated by Mr. Trasacco, likely after learning of the ongoing Compass scheme from Mr. Bernardo.   Mr. Trasacco initially approached Mr. Dimassa.   The vouchers were prepared by Mr. Trasacco.   Virtually all of the proceeds from these crimes were retained by Mr. Trasacco.   Mr. DiMassa

facilitated the approval of the vouchers, got cash kickbacks, and negotiated a larger cut as Mr. Trasacco expanded the scheme to include JIL.   But, unlike the first two schemes, this fraud was conceived and driven by Mr. Trasacco

### **Response to the Defendant's Sentencing Memo**

In his memo, the defendant raises a number of issues he argues that the Court should consider under § 3553(a).   The government agrees that the Court should consider his gambling addiction, family circumstances, and health considerations under § 3553(a)   But the government disagrees that the other rationales provided by the defendant warrant mitigation of his criminal activity.

First, the defendant argues that he should receive a lesser sentence because he was a public figure and will face "penalties well beyond the penalty meted out by the Court and normally experienced in the community by the average defendant." Def's Brief at 25.   He argues that his successes "were founded upon public service and improving the quality of life for the City of West Haven" and that his "public fall from grace was highly publicized."   *Id*.

This argument does not support a more lenient sentence in this case. To the contrary, it highlights an aggravating factor in these offenses.   It ignores the fact that the defendant's status in municipal government allowed Mr. DiMassa to commit this crime.   But for the virtually unfettered access to COVID funds given to Mr. DiMassa by West Haven, the crime would not have been committed.   To now argue that the very status that afforded him the opportunity to commit a serious crime is a basis for mitigation is utterly without merit.

To the contrary, in the government's view, this issue raised by the defendant instead touches on important principles in § 3553(a) such as just punishment and general deterrence.   The defendant was a public official elected to serve his constituents.   Instead, he completely betrayed that trust by stealing public funds for his own benefit.   This conduct that must be generally deterred as elected officials frequently have access to public funds.   And these were not just any public funds, but money designed to address the suffering at the height of the pandemic. That reality requires just punishment; actions have consequences.   To argue that his role as a public official somehow entitles him to leniency defies logic.

Next, the defendant appears to argue that he should receive a lesser sentence because of the "continuing effects of the COVID-19 pandemic…" Def's Brief at 29. In this case, for this defendant, this argument has no merit.   In his brief, the defendant points to no current data supporting his position and makes no argument how this situation would apply to his case.   Moreover, as a former public official who stole money designed to protect the public from COVID at the height of the pandemic, the argument is grossly misplaced.

The government acknowledges the role that Mr. DiMassa played in obtaining the conviction of Mr. Trasacco.   Mr. DiMassa provided extensive testimony during Trasacco's trial, which the jury found credible and was amply supported by other evidence.   The government agrees with the defendant's argument that his testimony should be considered along with the other factors under § 3553(a) in determining the sentence to be imposed.

## Conclusion

The Court should impose sentence after considering the Sentencing

Guidelines, the various sentencing memoranda submitted by the Parties, and the

additional sentencing factors under 18 U.S.C. § 3553(a).


                              Respectfully submitted,

                              VANESSA ROBERTS AVERY
                              UNITED STATES ATTORNEY

                                   /s

                              RAY MILLER
                              ASSISTANT UNITED STATES ATTORNEY
                              FEDERAL BAR NO. CT 20451

                              DAVID J. SHELDON
                              FEDERAL BAR NO. CT 07997
                              ASSISTANT UNITED STATES ATTORNEY

                              157 CHURCH STREET, 23RD FLOOR
                              NEW HAVEN, CT 06510
                              (203) 821-3700

CERTIFICATE OF SERVICE

This is to certify that on May 10, 2023 a copy of the foregoing Memorandum was filed electronically.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

/s _____

Ray Miller
Assistant U.S. Attorney